UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER JACOBSEN, | CASE NO. 5:16CV438 |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| | Magistrate Judge George J. Limbert |
| v. | |
| CAROLYN W. COLVIN[1], | AMENDED REPORT |
| ACTING COMMISSIONER OF | AND RECOMMENDATION |
| SOCIAL SECURITY, | OF MAGISTRATE JUDGE |
| Defendant. | |

Christopher Jacobsen ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  For the following reasons, the undersigned recommends that the Court affirm the ALJ's decision and dismiss the instant case with prejudice:

I.  **PROCEDURAL AND FACTUAL HISTORY**

Plaintiff initially filed an application for DIB on July 13, 2011.  ECF Dkt. #12 at 91 ("Tr.")[2]. The application was denied initially and upon reconsideration, and an Administrative Law Judge ("ALJ") ultimately denied benefits on May 10, 2013, finding that Plaintiff could perform jobs existing in significant numbers in the national economy with the residual functional capacity ("RFC") that she determined for him.  *Id.* at 93-101.

On June 10, 2013, Plaintiff filed a new application for DIB, alleging disability beginning May 11, 2013, the day after the date of the prior ALJ's decision, due to lower back pain, double hernia, shoulder problems, and numb arms.  Tr. at 155, 173, 184.  The SSA denied Plaintiff's

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found in the search box at the top of the page on the ECF toolbar.

applications initially and on reconsideration. *Id*. at 108-124. Plaintiff requested an administrative hearing before an ALJ, which was held on March 25, 2015. *Id*. at 30, 125. At the hearing, the ALJ accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 31. On April 3, 2015, the ALJ issued a decision denying benefits. *Id*. at 14-25. Plaintiff filed a request for review, which the Appeals Council denied on January 13, 2016. *Id*. at 1-9.

On February 25, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On June 1, 2016, Plaintiff filed a brief on the merits. ECF Dkt.#13. On July 29, 2016, with leave of Court, Defendant filed a brief on the merits. ECF Dkt. #15. Plaintiff filed a reply brief on August 10, 2016. ECF Dkt. #16.

**II**.       **SUMMARY OF RELEVANT PORTIONS OF THE ALJS' DECISIONS**

In her May 10, 2013 decision, the prior ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy despite his severe impairments of: degenerative disc disease ("DDD") of the cervical, thoracic and lumbar spine, including diagnoses of minimal scoliosis and a mild developmental anomaly at the L4-5 joint; cervical radiculitis and spondylosis; thoracic spondylosis; lumbosacral spondylosis without myelopathy; lumbago; lumbar stenosis; spinal stenosis without neurogenic claudication, brachial neuritis or radiculitis, not otherwise specified; cervical spondylosis without myelopathy; history of right shoulder clavicle fracture; left inguinal hernia; umbilical hernia, status-post surgery; and history of arthroscopic knee surgery. Tr. at 93-101. The prior ALJ found that Plaintiff's insomnia, sleep apnea, and anxiety and depression, were not severe impairments. *Id.* at 94. This ALJ determined that Plaintiff had the RFC to perform light work except that he could: occasionally push and/or pull, including the operation of hand controls with the right upper extremity; occasionally reach overhead with the right upper extremity; occasionally stoop, kneel, crouch, crawl, climb ramps and stairs; and never climb ladders, ropes or scaffolds. *Id*. at 95. In the most recent ALJ decision dated April 3, 2015, the current ALJ determined that Plaintiff, who was 48 years at the time of the alleged onset date, had the severe impairments of : DDD of the cervical, thoracic and lumbar spine, including diagnoses of minimal scoliosis and a mild developmental anomaly at the L4-5 joint; cervical radiculitis and spondylosis; thoracic spondylosis; lumbosacral spondylosis without myelopathy; lumbago; lumbar stenosis;

spinal stenosis without neurogenic claudication, brachial neuritis or radiculitis, not otherwise specified; and cervical spondylosis without myelopathy. Tr. at 16-17. The current ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments in the Listings. *Id.* at 19-20.

The current ALJ found that he was bound by the prior ALJ's RFC finding, holding that no new and material evidence or change of circumstances was presented that established a change in Plaintiff's RFC pertaining to the unadjudicated period since the prior ALJ's decision. Tr. at 14, citing *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). Thus, the ALJ set forth the same RFC for Plaintiff as the prior ALJ and subsequently found that while Plaintiff could not return to his past relevant work as an electrician, he could perform jobs existing in significant numbers in the national economy, including the representative occupations of assembler, printing machine operator, and marker. *Id*. at 22-24.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V. LAW AND ANALYSIS

Plaintiff complains that the ALJ lacked substantial evidence with which to find that no new and material evidence was presented warranting a departure from applying *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). ECF Dkt. #13 at 1, 13-15. Plaintiff asserts that new and material evidence exists which shows a worsening of his mental impairments and pain such that the ALJ should not have applied *Drummond*.

*Drummond* stands for the principle that absent evidence of a change in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. *Drummond*, 126 F.3d at 842; *see also* Acquiescence Ruling ("AR") 98-4(6). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422 (1966). In *Drummond*, the Sixth Circuit looked to whether substantial evidence was introduced to show that Plaintiff's condition changed significantly between the two hearing dates. *Drummond*, 126 F.3d at 843. The Court held that the Commissioner shoulders the burden of showing a change of circumstances to escape res judicata and substantial evidence was not introduced in order to find that the claimant's condition improved significantly between the two hearings so the subsequent ALJ was bound by the prior ALJ's determination. *Id*. The *Drummond* Court held that:

> Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence. To allow the Commissioner such freedom would contravene the reasoning behind 42 U.S.C. § 405(h) which requires finality in the decisions of social security claimants. Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.

*Id*. at 842. AR 98–4(6), issued post-*Drummond*, provides that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding." AR 98-4(6). AR 98-4(6) applies *Drummond* to a claimant's RFC "or other findings required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924, as appropriate, which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim." AR 98-4(6). However, the "Commissioner's Acquiescence Rulings-like the Commissioner's Regulations-are not the supreme law of the land. 'It is, emphatically, the province and duty of the judicial department, to say what the law is,' *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803), [']and the [Commissioner] will ignore that principle at his peril.' "

-5-

*Harris v. Astrue,* 2010 WL 3909495, at *5 (S.D. Ohio, 2010), adopted by 2010 WL 3909493 (S.D. Ohio 2010), quoting *Hutchison v. Chater*, 99 F.3d 286, 287–88 (8th Cir.1996) (other citations omitted) (brackets in *Hutchison*). The Sixth Circuit has held that the opposite is also true, that "when a plaintiff previously has been adjudicated not disabled, [he] must show that [his] condition so worsened in comparison to [his] earlier condition that [he] was unable to perform substantial gainful activity." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1232-1233 (6th Cir. 1993).

### A.  MENTAL IMPAIRMENTS

In the instant case, the current ALJ found the same as the prior ALJ with regard to Plaintiff's mental impairments. Tr. at 17. Like the prior ALJ, the current ALJ indicated at Step Two that Plaintiff's mental impairments of major depression and generalized anxiety disorder did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. *Id*. The current ALJ, like the prior ALJ, provided no restrictions in his RFC concerning any of Plaintiff's mental impairments. *Id*. at 20. The current ALJ determined that the subsequent evidence presented by Plaintiff was not new and material and did not show a change in circumstances and therefore did not justify departing from the prior ALJ's determination.

In support of his assertion that his depression and anxiety worsened and therefore the current ALJ was not bound by the prior ALJ's determination, Plaintiff cites to the dedicated psychiatric treatment that he began on June 11, 2013 at Community Services of Stark County ("CSSC") from Drs. Manudhane and Sivaram. ECF Dkt. #13 at 13. Plaintiff also cites to his testimony to the ALJ that since the prior ALJ's decision, he has become less active and less social, he did not bathe as often as he should, he had not been on vacation, visited with a close friend, attended church, attended a union meeting or fished in over a year. *Id*. at 14, citing Tr. at 42, 43, 51. Plaintiff also references global assessment of functioning ("GAF") scores of 47, 55, and 60 from his treating psychiatrist, a consultative psychologist, and a licensed social worker.  ECF Dkt. #13 at 14.

The undersigned recommends that the Court find that the evidence cited by Plaintiff is insufficient to show a worsening of his mental impairments such that they became severe and substantial evidence support the ALJ's determination as to Plaintiff's mental impairments. The current ALJ acknowledged that Plaintiff began specialized mental health treatment on June 11, 2013,

-6-

but he noted that this treatment began only one day after Plaintiff filed his current application for social security benefits. Tr. at 17. The ALJ also indicated that despite Plaintiff's testimony concerning confusion from depression and anxiety that resulted in difficulty in concentration and memory and in interacting with others, treating mental health sources did not note findings consistent with his testimony concerning those symptoms. *Id.*, citing Tr. at 328-332. As referenced by the ALJ, Plaintiff presented to Community Services of Stark County ("CSSC") for evaluation and he reported persistent depression, decreased attention span, and difficulty motivating himself. *Id.* at 332. However, an updated report from Dr. Manudhane at CSSC on September 6, 2013 indicated that Plaintiff had only mild major recurrent depression, and he had fair insight and judgment, and he had made some progress. *Id.* at 331-333. October 18, 2013 progress notes from Dr. Manudhane at CSSC found that Plaintiff made minimal progress as his medication had to be discontinued after Plaintiff reported side effects, but Plaintiff had good insight and judgment. *Id.* at 331.

On February 19, 2014, Dr. Sivaram at CSSC indicated that Plaintiff was seeing Dr. Manudhane who had diagnosed major depression. Tr. at 408. He noted that Plaintiff was started on Prozac, which he could not tolerate, then he was prescribed Effexor, which gave him side effects as well. *Id.* Plaintiff was then tried on several other medications, but he reported that nothing was helping him. *Id.* Plaintiff indicated that he was taking Xanax and Dalmane, which were helping him to sleep. *Id.* Dr. Sivaram observed that Plaintiff had a depressed but appropriate mood and affect, retarded motor activity and speech, and he continued Xanax, and started Plaintiff on Trazadone and Buspar. *Id.* at 408-409. He diagnosed major depression and generalized anxiety disorder. *Id.* at 409.

The ALJ also cited to April 2, 2014 progress notes from Dr. Sivaram at CSSC who noted that Plaintiff reported depression and anxiety from his pain. Tr. at 406. Dr. Sivaram diagnosed major depression and anxiety disorder and he increased Plaintiff's Trazadone and Buspar and continued the Xanax. *Id.* at 406. May 28, 2014 progress notes from Dr. Sivaram indicated that Plaintiff reported feeling better after Buspar was increased and extra Trazadone was added. *Id.* at 404. Plaintiff indicated that he felt less depressed and while he still had some anxiety, Xanax was helping. *Id.* Buspar and Xanax were continued, and Trazadone was reduced. *Id.* at 405.

The ALJ also referenced August 6, 2014 progress notes from Dr. Sivaram at CSSC noted that Plaintiff reported that he stopped taking Trazadone and Buspar because of side effects and he was only taking Xanax. Tr. at 402. Dr. Sivaram found that Plaintiff was mildly depressed, had logical thought process, retarded motor activity and speech, and he had fair insight. *Id*. at 400-403. He prescribed Seroquel and continued Plaintiff on Xanax. *Id*. at 402.

In referencing these treatment notes, the ALJ found that they did not support Plaintiff's reports of memory deficits or diminished social functioning. Tr. at 17. The ALJ also noted that Plaintiff reported improvement at times during his treatment, but frequent side effects resulted in numerous medication changes. *Id*. He also indicated that Plaintiff did not participate in counseling or therapy and he never required hospitalization or emergency room treatment for his mental health conditions. *Id*. at 18.

While Plaintiff asserts that these notes constitute new and material evidence showing a worsening of his mental impairments, the undersigned recommends that the Court find that the ALJ properly found that the notes did not show such a worsening of his conditions. The notes reveal that which the ALJ reported: that Plaintiff had negative mental and physical side effects from medications which resulted in numerous medication changes, the notes did not show that his impairments actually worsened, and some of the notes show that his impairments improved for some time, and the notes show that Plaintiff did not participate in counseling or had to go to the emergency room or was hospitalized due to his mental impairments. Moreover, the notes did not show that Plaintiff had memory or concentration problems. Thus, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to find that no new and material evidence or change in circumstances was presented to show that *Drummond* should not apply during the unadjudicated period of time since the prior ALJ's determination.

In addition to the treatment notes, lack of counseling or therapy, and lack of hospitalization for his symptoms, the ALJ also gave great weight to the opinions and findings of agency examining and reviewing psychological sources in finding that Plaintiff's mental impairments were not severe and did not require restrictions or limitations in his RFC. Tr. at 18. The ALJ cited to the agency source who, on September 9, 2013 examined Plaintiff and found that Plaintiff had an appropriate

-8-

affect, he was cooperative and friendly, he had no signs of anxiety during the interview, but he appeared somewhat depressed. *Id*. at 18, citing Tr. at 315. The ALJ noted that the agency examining source noted no abnormalities, and Plaintiff had adequate orientation, normal memory functions, mildly problematic concentration, adequate persistence, and he was somewhat distractible. *Id*. The examiner found that Plaintiff was functioning in the normal range of intelligence based upon his math skills, memory functions, abstract thinking and reasoning power. *Id.* He also found that Plaintiff had normal insight and judgment. *Id*. The examiner diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood and he rated Plaintiff's GAF at 60, indicative of moderate impairment. *Id*. at 316. His prognosis for Plaintiff was fairly stable and he opined that Plaintiff could understand, remember and carry out instructions, he could maintain persistence and pace to perform simple or multi-step tasks even with his mild distractibility problems, he would have no difficulty responding to co-workers or supervisors, and his anxiety and depression would not be significant factors in impacting his ability to deal with work-related pressures. *Id*. at 316-317.

The ALJ also relied upon the agency reviewing psychologists who found that no new and material evidence existed showing that Plaintiff's mental impairments were severe and thus the prior ALJ's determination should be adopted. Tr. at 18, citing Tr. at 58-86.

Plaintiff challenges the ALJ's non-reliance upon GAF scores of 47 and 55 assigned him from his treating psychiatrists and the GAF of 60 assigned him by the agency examining source. ECF Dkt. #13 at 14. He contends that these scores show that substantial evidence did not support the ALJ's finding that his mental impairments did not worsen and did not become severe since the date of the prior ALJ's decision. *Id*.

The undersigned recommends that the Court find no merit to Plaintiff's assertion. GAF scores are not "essential to the RFC's accuracy," but they "may be of considerable help to the ALJ in formulating the RFC." *Miller v. Comm'r of Soc. Sec.,* 811 F.3d 825, 836 (6th Cir. 2016), quoting *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir. 2002). The Sixth Circuit Court of Appeals indicated that it takes "a case-by-case approach to the value of GAF scores." *Miller*, 811 F.3d at 836.

In the instant case, the ALJ referenced the agency examiner's GAF of 60 for Plaintiff. Tr. at 18. And while not specifically mentioning the GAF scores of 47 and 55, the ALJ cited to the reports from the licensed social worker at CSSC who performed the initial diagnostic assessment of Plaintiff on June 11, 2013 and assigned Plaintiff a GAF of 47. Tr. at 17, citing Tr. at 261-262. The ALJ also cited to the treatment note of Dr. Manudhane dated September 11, 2013 which indicated a GAF of 55 for Plaintiff. Tr. at 17, citing Tr. at 333-334. Thus, it is reasonable to presume that the ALJ considered the GAF scores. However, in giving great weight to the agency mental health sources, the ALJ noted that the treatment notes did not support Plaintiff's reported severe mental health symptoms and the treatment notes supported the agency examining source's findings that Plaintiff had no significant work-related limitations from a mental health standpoint and the treatment notes contained no objective findings suggesting that such limitations existed. Tr. at 18. As described above, the treatment notes from Drs. Manudhane and Sivaram show Plaintiff's reports of various depressive and anxiety symptoms and the changing of medications due to Plaintiff's reported side effects from various medications. However, the treatment notes fail to show that Plaintiff's conditions worsened or required any work-related limitations. In fact, most of the findings were relatively normal, such as fair insight and judgment, with no observation of concentration, persistence, or memory difficulties.

Moreover, the GAF of 47 was assigned at the initial diagnostic stage by a licensed social worker when Plaintiff reported that the medications that his primary care physician had prescribed were not helping, which led him to seek more specialized treatment, albeit one day after he filed his present application for social security benefits. Tr. at 261. The GAF of 55 was assigned by Dr. Manudhane on September 11, 2013, who indicated that Plaintiff was making some progress, his insight and judgment were fair, and his major recurrent depression was mild in severity. *Id.* at 333. No work-related limitations were mentioned or opined by Dr. Manudhane or Dr. Sivaram.

Finally, the undersigned recommends that the Court find no merit to Plaintiff's assertion that his testimony that he had become less social May 2013 proves a worsening of his mental impairments. "[A]n ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant making a determination of disability." *Jones v. Comm'r*

*of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The ALJ considered Plaintiff's testimony concerning his "vague difficulties in his interactions with others." Tr. at 17. However, the ALJ noted that while Plaintiff reported to the agency examiner in September 2013 that he was not involved in any organized groups or activities, Plaintiff indicated in February 2014 that his social groups are his electrician's union and his church. *Id*. at 19, citing Tr. at 397. He also indicated in his disability report in July of 2013 that he talked on the telephone with others, visited neighbors and visited relatives. *Id*. at 201. The ALJ also referred to the objective evidence overall that failed to show that he was functionally limited from his mental health impairments, such as no opinions or findings from treating psychiatrists that he was functionally limited by his depression or generalized anxiety disorder and the opinions from the agency examining and reviewing mental health sources that Plaintiff would have no or no more than mild limitations in social functioning. *Id*. at 18-19, citing Tr. at 317. The ALJ noted that the agency psychologist found that Plaintiff was pleasant and even friendly at the examinations. *Id.*, citing Tr. at 317. The agency examining psychologist noted that Plaintiff presented as "a fairly outgoing individual who appears to have reasonably good relationships with family and friends." *Id*. at 317. He also opined that Plaintiff's depression and anxiety "appear to be effectively treated." *Id*. at 316.

Reviewing the ALJ's decision and the evidence of record, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to find that Plaintiff's testimony concerning his less social activity since May of 2013 was not supported by the record and does not suffice to overcome a finding that no new and material evidence or change in circumstances concerning his mental impairments demanded a departure from the prior ALJ's determination.

In summary, the undersigned recommends that the Court find that the current ALJ applied *Drummond* correctly and substantial evidence supports the ALJ's decision to apply *Drummond* because Plaintiff's assertions that his mental impairments worsened and became severe since the prior ALJ's decision lack merit. For the above reasons, the undersigned recommends that the Court find that Plaintiff's assertions that he began treating with psychiatrists, had moderate and severe reported GAFs and testified that he became less social, do not sufficiently establish a worsening of his depression and anxiety so as to overcome the application of *Drummond*.

### **B.    PAIN**

Plaintiff also asserts that he has had worsening pain since the date of the prior ALJ's decision and he has been attending pain management since January of 2014.  ECF Dkt. #13 at 14.  He describes the numerous other treatment modalities that he tried in order to alleviate his pain from his DDD of the cervical, thoracic and lumbar spine and related conditions thereto.  *Id*.  He contends that the ALJ failed to note the failure of the treatment modalities that he did try and he emphasizes his testimony that he had trouble buttoning his shirts and tying his shoes over the past year, he could not work because he could not stand on his feet very long, and he could only lift a half-gallon of milk with his left hand but not his right hand.  *Id*. He also cites to the notes of his pain management doctors who indicated that he had increased pain at times, reduced muscle and grip strength and he needed Percocet for breakthrough pain.  *Id*. at 15.  Plaintiff concludes that this shows that substantial evidence does not support the current ALJ's decision to be bound by the prior ALJ's decision, since the evidence showed that his activities of daily living had diminished, his pain had increased, the medication types and dosages had increased, he was prescribed a TENS unit, and his pain caused him to seek psychiatric treatment.  *Id*.

The current ALJ considered all of the evidence pointed out by Plaintiff to this Court.  In evaluating Plaintiff's credibility concerning his pain and limitations, the ALJ noted Plaintiff's testimony that he could not sit, stand or walk for very long or bend at the waist, and he could lift a half-gallon of milk only with his left hand.  Tr. at 20-21.  In finding that Plaintiff's severe pain and limitation allegations were not entirely credible, the ALJ noted that Dr. DeMicco, Plaintiff's treating spine specialist, indicated that Plaintiff was not a surgical candidate in November 2011 and he treated Plaintiff with medications, including opioids, and referred Plaintiff to a pain rehabilitation program in 2012, but Plaintiff was unable to participate because he said he "had to put his own care on hold to help care for his father-in-law."  *Id.* at 21, quoting Tr. at 324.  The ALJ indicated that Plaintiff was again referred to a pain rehabilitation program in August 2013 by Dr. DeMicco.  *Id*. at 277.

Records show that Plaintiff attended a Pain Medicine Evaluation in September of 2013. Tr. at 323.  He related his history of falling 30 feet from a ladder and hitting his head on a driveway in 1993.  *Id*.  He indicated that he was taken to the emergency room and had a brief stay in the hospital

-12-

for a skull fracture.  *Id*.  He returned to work thereafter, but on light duty.  *Id*. Plaintiff stated that he had no ramifications from this injury except possibly memory issues, but he wondered if it related to his complaints of diffuse pain on the entire right side of his body.  *Id*.  Plaintiff informed the doctor that he began experiencing pain in his low back in 2009 which was not due to any injury as he just had difficulty getting out of bed one morning and went to the emergency room and then to his primary care doctor, who sent him to Dr. DeMicco.  *Id.*  Plaintiff related that he had tried facet blocks, epidural steroid injections and opioid medications, as well as physical therapy.  *Id.* at 324-325.  He was using a home traction device which provided limited benefit, but he reported that his use of a TENS unit "helped some."  *Id*. at 324.  Plaintiff was advised to participate in a chronic pain rehabilitation program for 3-4 weeks.  *Id.* at 326.  His prognosis was good. *Id*.

However, the ALJ indicated that Plaintiff did not return to Dr. DeMicco for further evaluation or treatment and he had no treatment from the end of September 2013 through January 20, 2014 until he went to pain management specialist Dr. Balter on January 20, 2014.  Tr. at 21, citing Tr. at 323-326, 367.  The ALJ did note that Dr. DeMicco wrote a "To Whom it may Concern" note for Plaintiff on January 20, 2014 indicating that Plaintiff required a disability parking placard because he could not walk 200 feet without stopping to rest.  *Id.* at 22, citing Tr. at 362.  However, the ALJ found this note to be unpersuasive as it was not supported by Dr. DeMicco's own clinical findings.  *Id.* at 22.  In discounting Dr. DeMicco's conclusion on the note, the ALJ cited to Dr. DeMicco's August 15, 2013 progress notes indicating that Plaintiff had normal range of motion, and normal strength, gait, reflexes and sensation on physical examination.  *Id*. at 22-23, citing Tr. at 277-278.  The ALJ also cited to Dr. DeMicco's April 2013 examination findings where Plaintiff was able to stand from a seated position and ambulate without difficulty and walk with a normal gait.  *Id.* at 23, citing Tr. at 281.

The ALJ also found that while some positive clinical findings were noted by pain management physicians when Plaintiff did go to pain management, they were limited to a restricted range of spinal motion, and tenderness to palpation of the paraspinal musculature.  Tr. at 22, citing Tr. at 364, 368-369, 372, 376, 380, 384, 388, 394.  The ALJ cited to 13 instances where pain management physicians found that Plaintiff had normal sensation, normal motor strength in the upper

and lower extremities, and a normal gait. *Id.* at 22, citing Tr. at 364-365, 367-368, 372, 375-377, 380, 388, 393-394. It was also noted at these examinations that Plaintiff was able to rise from a seated position easily and move about the rooms without difficulty. *Id.* at 367, 372, 375-376, 380, 384, 388, 393.

As the ALJ also found, Plaintiff reported that his symptoms were improved while he was using conservative measures, such as a TENS unit. Tr. at 21, citing Tr. at 371, 375-376, 379, 383, 387, 393. Also as the ALJ reported, Plaintiff reported his pain to be a 5-6 on most occasions and reported his pain to be no more than 7 since January of 2014, with only one 8 reported prior to that time, on a pain scale of 1 to 10. *Id*. at 22, citing Tr. at 371, 375, 379, 379, 383, 387, 393.

With these findings, the ALJ had substantial evidence to find that Plaintiff's pain had not worsened such that he should depart from the prior ALJ's decision. And while Plaintiff complains that the ALJ should not have relied upon the conclusions of two agency physicians who reviewed his case file on August 27, 2013 and November 13, 2013 because more recent evidence was available, the undersigned finds that the ALJ did review the most recent evidence in addition to these opinions and provided substantial evidence to find that no new and material evidence or change in circumstances was presented to require a departure from the prior ALJ's determination.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court affirm the ALJ's decision and dismiss Plaintiff's complaint in its entirety with prejudice.

DATE: October 21, 2016

    */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).